UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

          Plaintiff,

v.                                                  Case No. 09-20523-09
                                                  Hon. Thomas L. Ludington

SALAH DADO,

          Defendant.
_____/

**OPINION AND ORDER GRANTING
PLAINTIFF'S MOTION FOR PROTECTIVE ORDER**

On May 2, 2012, Defendant Salah Dado was convicted by a jury of two counts of criminal conduct related to a conspiracy to manufacture marijuana. On June 6, 2012, Defendant filed a motion for a new trial, contesting his trial counsel's effectiveness and alleging the government withheld exculpatory evidence. During the six months that followed — including three evidentiary hearings — Defendant's allegations were assessed. Finding them without merit, the Court denied Defendant's motion for a new trial on January 17, 2013. *See* Jan. 17, 2013 Op. & Order, ECF No. 387.

Defendant was scheduled to be sentenced on February 25, 2013. But factual objections and legal questions concerning Defendant's guideline scoring — raised by both parties — required further attention. Specifically, the government alleges that Defendant should receive sentencing enhancements for his role in the offense, for intimidating witnesses and obstructing justice, and for impeding the administration of justice with his motion for a new trial. Defendant argues that he took no part in witness intimidation, and also that he did not possess the firearm supporting a sentencing enhancement. The Court adjourned Defendant's sentencing so careful attention could be given to these matters.

# I

While the Court was giving attention to Defendant's motion for a new trial, the Probation Department interviewed Defendant and prepared a Presentence Investigation Report (PSR) that was circulated for review on August 8, 2012. At the same time, Defendant received and accepted "Instruction for Completing Net Worth Short Form Statement."[1] He completed the form, reflecting ownership of a residence at 6072 Deer Park Pass, valued at $119,000, a vehicle, and an overall negative net worth of $11,662. Defendant also acknowledged — under penalty of perjury — that the information he had provided was true and correct. Defendant was thus aware that false statements could result in "possible prosecution under the provisions of 18 U.S.C. § 1001."

The government filed two objections to the PSR, as did Defendant. The government argues that Defendant "should be assessed four points for his role in the offense of conviction pursuant to USSG § 3B1.1(a)" and also that Defendant's "aggravating role, in combination with his intimidation of witnesses, gives rise to a specific offense characteristic that, in turn, results in an additional 2-point assessment under USSG section 2D1.1(b)(14)(D)." Along with its second objection, the government also contends that "[i]t is foreseeable that a separate and independent basis for that adjustment to [Defendant's] guideline score may arise in connection with the defendant's motion for a new trial."

---

[1] "Having been convicted in the United States District Court, you are required to prepare and file with the probation officer an affidavit fully describing your financial resources, including a complete listing of all assets you own or control as of this date *and any assets you have transferred or sold since your arrest*. Amendments were made to 18 U.S.C. §§ 3663(a)(1)(B)(i), 3664(d)(3), and 3664(f)(2), and Rule 32(b)(4)(F) to clarify that *the assets owned, jointly owned, or controlled by a defendant, and liabilities are all relevant to the court's decision regarding the ability to pay*. Your Net Worth Statement should include assets or debts that are yours alone (I-Individual), assets or debts that are jointly (J-Joint) held by you and a spouse or significant other, assets or debts that are held by a spouse or significant other (S-Spouse or Significant Other) that you enjoy the benefits of or make occasional contributions toward, and assets or debts that are held by a dependent (D-Dependent) that you enjoy the benefits of or make occasional contributions toward. The court may require relating to such other factors as the court deems appropriate. (*see* 18 U.S.C. § 3664(d)(3))." (emphasis added).

For Defendant's part, he first "denies that he made, or was responsible for making, the threats referred to in the Presentence Investigation Reports . . . [and] the claims made by the co-defendant's [] lack sufficient indicia of reliability to support any enhancement of his offense level." Defendant also "denies that he possessed the pistol found at his place of employment."

In addition to the objections to the PSR, the Court also received sentencing memoranda from both Defendant and the government. Defendant, attaching 27 letters from friends and family pleading his cause, requested leniency given his status as "a loving husband and exceptionally devoted father, who has proven himself to be a trusted and well-liked member of his community, and a man of generous nature and, of good deeds and open-handed accomplishments." Def.'s Sent. Mem. 2, ECF No. 396. The government's sentencing memorandum concerned its request that Defendant receive a four-point enhancement for his role in the offense. The government argued, "[Defendant] can fairly be characterized as the lynchpin of the organization that became [his] enterprise, particularly in 2009." Pl.'s Sent. Mem. 4, ECF No. 404.

On March 13, 2013, the government moved for a protective order to allow certain documents to be reviewed, *in camera*, and then relied upon during Defendant's sentencing. Specifically, the government has in its possession a report created by the Federal Bureau of Prisons, and an attached letter from an inmate, alleging that Defendant placed bounties on various co-defendants to prevent them from testifying. Defendant responded that the "allegations lack sufficient indicia of reliability to support any enhancement of his offense level, under the standards set forth in *United States v. Hunt*, 487 F.3d 347, 352 (6th Cir. 2007)." Def.'s Resp. 1, ECF No. 401. The government replied, "the court's review of the two documents will enable the court to conclude that the copy of the actual letter need not be made available to

defense counsel to give defense counsel 'a reasonable opportunity to comment on the information' relevant to the sentencing of the defendant." Pl.'s Reply 5, ECF No. 402. "The threat assessment report and letter referenced in that report contain information that is sensitive and should not be disseminated further. A protective order barring additional disclosures should be granted by the court." *Id*.

Defendant filed a supplemental sentencing memorandum on March 25, 2013, again alleging Defendant was not involved with witness intimidation, and attempting to resolve three issues related to the accuracy of the financial information Defendant provided in his New Worth Short Form.

## II

The burden of proof for all factual matters at sentencing is a preponderance of the evidence. *United States v. Rodriguez*, 896 F.2d 1031, 1032 (6th Cir. 1990). The government bears the burden of establishing the initial offense level, and then the burden is on the party seeking any adjustment. *Id*. at 1032–33. For example, if the government seeks to increase the defendant's offense level, it bears the burden of establishing the facts to support the increase. Likewise, "[i]n circumstances where a defendant advances a mitigating factor which if accepted by the court would potentially reduce the sentence," the defendant bears the burden of establishing those facts. *Id*. at 1033.

## III

The PSR has been circulated by the Probation Department concerning Defendant's offense level and the applicable sentencing guidelines range. Because the government seeks to increase Defendant's offense level, it bears the burden of justification.

**A**

The first issue to be addressed is Defendant's role in the marijuana-manufacturing conspiracy. The government believes that Defendant should be assessed four additional offense-level points pursuant to U.S. Sentencing Guidelines Manual § 3B1.1(a) (2011). That section provides, "If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase [the criminal offense level] by **4** levels." *Id*. (emphasis in original). Factors to be considered in determining a defendant's role as organizer or leader include:

> [T]he exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S. Sentencing Guidelines Manual § 3B1.1, Application Note 4.

The government claims that evidence from Defendant's trial is sufficient to support an enhancement under § 3B1.1. In particular, the government argues that Defendant

> provided critical support to the marijuana manufacturing operation . . . with the expectation that doing so would enable him to obtain for distribution much or all of the marijuana cultivated, harvested, or processed . . . [Defendant's] sophisticated leadership style was manifested by his efforts at recruiting and enabling others to participate in the conspiracy.

Pl.'s Obj. 1.

The United States Probation Department disagrees. According to the Probation Officer, "[a] review of the available file material would indicate the defendant did not exercise any decision making authority. The defendant's participation in the commission of the offense seems to be limited to his financial backing towards the conspiracy." Additionally, the Probation Officer noted that "defendant may have had a claimed right to a larger share of the fruits of the

crime; however, as noted earlier it was the decision of those who grew the plants to determine to whom they would sell the final product."

The Probation Officer's analysis is sound. While evidence at trial did indicate Defendant attempted to recruit at least one individual to invest in the conspiracy, aside from that, his involvement did not go beyond financing the operation. Defendant did not visit the site while the marijuana was grown and harvested; there was no evidence he had decision making authority as to how the marijuana would be produced; and, noted above, the other conspirators decided to whom they would sell the end product. All of this was substantiated by government's counsel in her closing remarks. She emphasized:

> [Defendant] had no chance – took no risk of being caught out in that marijuana field. . . . there were no clones at his house . . . This isn't in his garage. He didn't have that risk of discovery. He didn't have freezers filled with marijuana. And he doesn't have groups of people gathered around the poker table at his house processing the marijuana. All that is safely away from him. He takes none of those risks. And therefore, he's not the one who is worried about having his fingerprints on the bags. But he does put up the money. And when you think about it, that's the safest part, put up the money, a lot less risk than being the growers.

Trial Tr. VII, at 684, ECF No. 335. The government's counsel concluded, "He's more of the hands-off person involved in the production and he gets the end product. . . . [Defendant] affirmatively acted to aid in that production of those plants by providing money at the one end and an outlet for the product in the other." *Id*. at 696, 697. Counsel offered no evidence that Defendant was the "lynchpin" to this operation, or that the other conspirators were under his authority. Instead, the government painted the picture of a man in the background, who injected cash and received the end product. Not a man who controlled the operation itself.

The government has not demonstrated, by a preponderance of the evidence, that Defendant's role in the offense warrants application of § 3B1.1, and an enhancement under that section will not be applied.

**B**

Next, the government alleges that Defendant intimidated witnesses in an attempt to keep them from testifying against him, and as a result deserves an additional two-point increase under § 2D1.1(b)(14)(D). The Probation Department agrees.

Section 2D1.1(b)(14) establishes that if a defendant receives an adjustment under § 3B1.1 (Aggravating Role) and engaged in witness intimidation, a two-level enhancement should apply. § 2D1.1(b)(14)(D). Importantly, § 2D1.1(b)(14) only applies if a defendant first "receives an adjustment under § 3B1.1." § 2D1.1(b)(14). However, discussed previously, an adjustment under § 3B1.1 is not applicable to Defendant given his role in the offense. Accordingly, § 2D1.1(b)(14)(D) also does not apply.

Although § 2D1.1(b)(14)(D) is inapplicable to Defendant, there is one additional question to be addressed. The Probation Department indicated that Defendant attempted to obstruct or impede the administration of justice (through witness intimidation) and therefore deserved a two-level enhancement under § 3C1.1. But the Probation Department did not apply an enhancement for obstruction of justice because it had already applied § 2D1.1(b)(14)(D). *See* U.S. Sentencing Guidelines Manual § 3C1.1, Application Note 7 ("if the defendant receives an enhancement under § 2D1.1(b)(14)(D), do not apply this adjustment.").

But because § 2D1.1(b)(14)(D) will not be applied, an enhancement under § 3C1.1 for obstruction of justice is potentially warranted. While conferring with defense counsel and the Court on February 25, 2013, the government produced a threat-assessment report that was

created by the United States Department of Justice: Federal Bureau of Prisons. The report indicated that Witness X[2] claimed that while incarcerated, he was threatened with a homemade weapon and warned not to testify against Defendant. Witness X also provided a letter from a second inmate, Witness Y.[3] In the letter, Witness Y claimed that another individual, Witness Z, indicated that "a guy named Sal" placed $50,000–$100,000 bounties on co-defendants in his case to keep them from testifying. Witness Y further claimed that Witness Z told him he would be paid $10,000 if he was willing to "beat this guy [] up real bad." The government has moved for a protective order to "make the report and letter available to court *in camera* for use in sentencing the defendant." Pl.'s Mot. 1, ECF No. 400.

Defendant objects to any enhancement — either for witness intimidation under § 2D1.1(b)(14)(D) or obstruction of justice under § 3C1.1 — based on this information. He denies that he made, or was responsible for making, the threats discussed above. According to Defendant, "these allegations lack sufficient indicia of reliability to support any enhancement of his offense level, under the standards set forth in *United States v. Hunt*, 487 F.3d 347, 352 (6th Cir. 2007), and authorities there cited." Def.'s Resp. 1. Defendant also requests "meaningful access to the documents" in order to further evaluate his position. *Id*.

The Due Process Clause of the Fifth Amendment imposes a minimum standard of reliability for evidence to be considered at sentencing. *See United States v. Silverman*, 976 F.2d 1502, 1504 (6th Cir. 1992) (en banc) (citing *United States v. Baylin*, 696 F.2d 1030, 1040 (3d Cir. 1982)). Generally, the Federal Rules of Evidence do not apply to sentencing proceedings, Fed. R. Evid. 1101(d)(3), and hearsay evidence is admissible, *United States v. Davis*, 170 F.3d 617, 622 (6th Cir. 1999). However, U.S. Sentencing Guidelines Manual § 6A1.3(a) requires that

---

[2] The names of the individuals involved with these documents will not be used in this order.
[3] The inmate's name will not be used in this order.

evidence meet a minimum indicia-of-reliability standard in order to be admissible in guidelines sentencing proceedings. Section 6A1.3(a) provides:

> When any factor important to the sentencing determination is reasonably in dispute, the parties shall be given an adequate opportunity to present information to the court regarding that factor. In resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, *provided that the information has sufficient indicia of reliability to support its probable accuracy.*

U.S. Sentencing Guidelines Manual § 6A1.3(a) (emphasis added). This standard has been adopted by the Sixth Circuit. *See Hunt*, 487 F.3d at 352 ("This court has explicitly stated that the district court may consider hearsay in sentencing, but the district court must 'find it to have sufficient or minimally adequate indicia of reliability.'") (quoting *Silverman*, 976 F.2d at 1513).

At this point, the Court is satisfied that the documents at issue are sufficiently reliable to be considered in sentencing Defendant. The fact that Witness Y indicated "a guy named Sal" had offered money to abuse witnesses substantiates Witness X's allegations contained in the Bureau of Prisons letter. Taken together, the letter and Bureau of Prisons report constitute compelling evidence that Defendant attempted to intimidate witnesses and thereby obstruct justice.

However, the Court notes that the Sixth Circuit has cautioned, "due to a co-conspirator's strong motivation to implicate the defendant and to exonerate himself, a co-conspirator's statements about the defendant's involvement in the crime should be viewed with special suspicion." *Hunt*, 487 F.3d at 352 (internal quotation marks omitted) (quoting *United States v. Gomez-Lemos*, 939 F.2d 326, 330 (6th Cir. 1991)). And in this case, the possibility that Witness X would overstate the need for security to provide his family greater protection cannot be dismissed out of hand. Accordingly, the question becomes does the Defendant want to examine

Witnesses X, Y, and Z concerning the veracity of the allegations outlined above? If Defendant so wishes, and can undermine the reliability of the statements contained in the Bureau of Prisons' report and the inmate's letter, then those documents will not be considered during Defendant's sentencing and the government will not have met its burden of demonstrating § 3C1.1 should apply. But Defendant must make this decision.

Also, Defendant's claim that he requires "meaningful access to the documents" will be overruled, and the government's motion for a protective order will be granted. During the February 25, 2013 discussion, Defendant's counsel was able to review the documents and take notes as to what they contained. Further, there is no reason Defense counsel would be unable to see the documents again upon request. However, these are not the type of documents that should be circulated, and accordingly, Defendant will not be provided a physical copy of either the Bureau of Prisons' report or Witness Y's letter.[4]

## C

Finally, the government alleges that Defendant may deserve an additional 2-level offense increase "in conjunction with the defendant's motion for a new trial." Pl.'s Obj. 1. The government alleges that Defendant's motion further impeded the administration of justice, and thus constitutes "a separate and independent basis" for an adjustment to Defendant's guideline score pursuant to § 3C1.1. But that section "is not intended to punish a defendant for the exercise of a constitutional right." U.S. Sentencing Guidelines Manual § 3C1.1, Application Note 2. Accordingly, Defendant's motion for a new trial, in which he asserted his rights, will not support application of § 3C1.1 to further enhance his offense-level.

---

[4] Federal Rule of Criminal Procedure 32 establishes that a presentence report "*must* exclude the following: . . . (B) any sources of information obtained upon a promise of confidentiality; and (c) any other information that, if disclosed, might result in physical or other harm to the defendant or others." Fed. R. Crim. P. 32(d)(3) (emphasis added). Both the BOP report and the inmate letter could bring harm to those that provided the information contained therein.

# D

Two additional issues require attention. The first is Defendant's assertion that he did not possess the firearm recovered from his store when he was arrested. Defendant argues the pistol was legally owned and possessed by his cousin, Kenneth Dado. On this point, again, the Parole Officer's analysis is spot on. Under U.S. Sentencing Guidelines Manual § 2D1.1(b)(1), if, in connection with offenses involving drugs and other narcotics, "a dangerous weapon (including a firearm) was possessed, increase by **2** levels." (emphasis added). According to § 2D1.1(b)(1), Application Note 3(A), "The enhancement should be applied if the weapon was present, unless it is *clearly improbable that the weapon was connected with the offense*." (emphasis added). The Probation Department noted that "[w]hether the firearm was Kenneth Dado's is irrelevant as it was found in close proximity to the drugs found in the store and the cash register of which defendant had sole control at the time." The Probation Officer continued,

> Furthermore, the defendant was known to either sell or purchase marijuana from the store as evident in paragraph 27 of the presentence report. With the firearm in close proximity of the drugs and within arm's reach of the defendant, it can be concluded the firearm is in direct correlation and in furtherance of the criminal activity.

The Court agrees, and Defendant's objection will be overruled.

Additionally, during the conference, questions were raised by the government concerning the adequacy and completeness of the Defendant's net worth statement. In response, Defendant furnished a supplemental sentencing memorandum in an effort to clarify his involvement with a number of disputed assets. At this point, the government has offered no response to contest the points made by Defendant, and they need not be addressed here.

## IV

Accordingly, it is **ORDERED** that the government's motion for a protective order, ECF No. 400, is **GRANTED**. Although the Court will not disseminate a physical copy of the Bureau of Prisons report or related inmate letter to Defendant, counsel will have the ability to review the documents at the courthouse upon request.

It is further **ORDERED** that Defendant is **DIRECTED** to indicate by correspondence to the government and the Court its preference regarding cross-examining Witnesses X, Y, or Z no later than **April 12, 2013**. If such an intent exists, the Court will provide a date and time to conduct such a hearing.

Dated: April 5, 2013
s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

**PROOF OF SERVICE**
The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on April 5, 2013.
s/Tracy A. Jacobs
TRACY A. JACOBS